IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC SMITH, | ) |
| Plaintiff, | ) ) ) ) |
| -vs- | ) Case No. CIV-21-737-F ) |
| DENIS McDONOUGH, SECRETARY OF VETERANS AFFAIRS, and THE DEPARTMENT OF VETERAN AFFAIRS, | ) ) ) ) ) ) |
| Defendants. | ) |

## **ORDER**

After dismissal of his employment discrimination claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701, *et seq.*, with leave to amend, plaintiff Eric Smith (Smith) filed an amended complaint. *See*, doc. no. 9. Defendant Denis McDonough (McDonough) again moves, under Rule 12(b)(6), Fed. R. Civ. P., to dismiss Smith's Title VII and Rehabilitation Act claims, arguing Smith fails to allege facts in the amended complaint necessary to support plausible claims. *See*, doc. no. 10. Smith opposes dismissal, asserting his claims are well pled. *See*, doc. no. 11. McDonough has replied. *See*, doc. no. 12. Upon review of the parties' submissions, the court makes its determination.

I.

*Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In making this assessment, the court accepts as true all well-pleaded factual allegations in the amended complaint and views these allegations in the light most favorable to the plaintiff.  Cummings v. Dean, 913 F.3d 1227, 1238 (10th Cir. 2019).

The Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in his complaint, but the elements of each cause of action help to determine whether the plaintiff has set forth a plausible claim.  Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

II.

*Factual Background*

Smith is a long-time employee of the United States Veterans Administration. In 2017, Smith was employed in the position of Laundry Foreman, W6-03, at the Oklahoma City Veterans Affairs (VA) Medical Center.  He supervised 13 to 15 employees.

Smith self-identifies as male, black, and African-American.  In approximately 2007, he was diagnosed with Post-Traumatic Stress Disorder (PTSD), resulting from prior Army active-duty service in Iraq.  He carried a 60% VA disability rate and management was aware of his mental condition.

Smith's first level supervisor was Darryl Lynch (Lynch), an African-American male, and his second level supervisor was Claude Rivers (Rivers), a white male.  They held the positions of Assistant Chief of, and Chief of, Environmental Management Services.

On or around August 31, 2017, Smith was granted permission to go on a detail to special duty in California.  The detail was for 120 days.  Smith traveled to California on September 6, 2017.  Shortly thereafter, Smith was advised that his

detail was being terminated on September 30, 2017 "for performance reasons" because Smith "failed to complete important job duties before he left." Doc. no. 9, ¶ 20.

Smith had completed all tasks possible before he left. Smith, however, could not complete certain annual reports and employee annual appraisals prior to his leaving because those reports and appraisals could not be completed until the end of the fiscal year, October 31, 2017,[1] or later. Smith had prepared in advance required letters for his employees. Upon his return, Lynch informed Smith that Kim Brewer was to complete the appraisals. Ms. Brewer is not described in the amended complaint other than as a female co-worker who is–somewhat incongruously–alleged to be both similarly situated to Smith (¶ 34) and subordinate to Smith (¶ 48(c)).

In September of 2017, Smith sent emails to VA Director Wade Vlosich (Vlosich), Josh Brown (Brown), Rivers and Lynch stating that he had completed all assignments within his power before his detail to special duty.

Certain subordinate employees had requested annual leave in September of 2017 and Smith staggered the leave so that the laundry facility was not short-staffed. Kim Brewer, Lynch, and Rivers had not made any objections to the leave granted by Smith. He made sure sufficient staff was present to run the laundry services.

While in California, Smith became aware of "open workplace threats" against his position made by Lynch to another employee, Lois Orange. Doc. no. 9, ¶ 21. Lynch said he would put a stop to Smith transferring to California.

Smith needed 90 days of the 120-day detail "to put on his resume" so he "could then promote" to a position of Assistant Chief of Environmental Management

---

[1] The amended complaint refers (twice–¶¶ 15 and 16) to October 31 as the end of the fiscal year. The court assumes that to be true for present purposes, although September 30 is the fiscal year end for federal agencies. That possible discrepancy is of no moment here.

3

Services in California or at another VA institution.  Doc. no. 9, ¶ 22.  According to Smith, Lynch was displeased that Smith was in California with Lynch's ex-girlfriend.

Smith made written complaints in October of 2017 to Vlosich, Brown, Rivers, and Sharon Shaffer (Shaffer), EEO Secretary, concerning his treatment.

Another employee, Joe Norton, Sr., told Smith that Lynch had stated to him that Lynch "was going to pull the rug out from under [Smith], he was treading water as far as his job was concerned."  Doc. no. 9, ¶ 25.

Lynch stopped all personal communications with Smith from October 3-6, 2017.  Lynch would only communicate with him by email.  This was a departure from their normal pattern of communication.

On or around October 8, 2017, during a routine discussion of workplace tasks, Lynch said in a very unfriendly tone and manner that the work environment "was a dictatorship, not a democracy."  Doc. no. 9, ¶ 27.

Lynch told Charles Alexander, another supervisor in the laundry service, that he was going to ask management to fire Smith.  In an email, Smith complained about it to Vlosich and Brown.

Rivers imposed a 3-day suspension on Smith.  The suspension was without pay.  HR was not involved in the decision as to the length of suspension.

On or about October 30, 2017, Lynch, during a meeting, yelled at Smith and other supervisors because he did not like the way the laundry service was being operated.

On or around November 8, 2017, Lynch came up from behind Smith, who was sitting in a chair, and squeezed Smith's right shoulder.  When Smith turned around to see who was behind him, Lynch thrust written papers into Smith's face and said: "Here you go."  Doc. no. 9, ¶ 31.  The papers were a disciplinary write up of Smith.  He froze in shock.  He then went to Rivers' office to report the assault and

4

battery, but Rivers was not there. Smith went to Shaffer and to the VA police. Because the pain in his shoulder became more acute, Smith went to the Employee Health Physician at the VA. The physician said Smith's shoulder was swollen and prescribed medication. He assigned Smith to light duty.

On or around November 9, 2017, Rivers reassigned Smith to the Phone Operating Room. The transfer was not done at Smith's request and was a departure from the VA's normal process of removing the accused employee from the workplace and not the accuser.

On or around December 1, 2017, Brown, a white male, issued Smith a 3-day suspension for failure to follow supervisory instruction and failure to carry out supervisory duties. Brown never visited with Smith about any of the events at issue and he did not conduct any personal independent investigation of any kind before rubber stamping the 3-day suspension.

Brewer regularly used either annual leave or sick leave on nearly every Monday or Friday to arrange for a 3-day weekend. Lynch granted the leave to Brewer. Brewer was allowed to request annual leave or sick leave from Lynch directly, rather than Smith, and Smith would not know of that leave until Brewer failed to show up at work.

Lynch gave Brewer favorable treatment in workplace assignments by not allowing Brewer to do certain tasks in the laundry because "she is a woman." Doc. no. 9, ¶ 37. That was not done for any other female employees or for Smith.

Brewer used the internet to publicly threaten the life and health of Smith. She blogged she would "get her goons to f-up" Smith. Doc. no. 9, ¶ 38. Other employees saw the threats against Smith and discussed them at work. Brewer was directed by Lynch to take down the threats, but she never received any suspension or discharge because of it.

III.

*Title VII Claims*

As with the original complaint, Smith alleges in the amended complaint Title VII claims for hostile work environment and disparate treatment based upon sex (male), color (black) and national origin (African-American). The court addresses the claims in turn.

*Hostile Work Environment*

The elements of a Title VII hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on sex, color, or national origin; and (4) the harassment was sufficiently severe or pervasive that it "altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.""" Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015) (quoting Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007) (quoting Dick v. Phone Directories Co., 397 F.3d 1256, 1262-63 (10th Cir. 2005)).

Plaintiff alleges facts to establish his Title VII protected status. Plaintiff also alleges facts to establish he was subjected to unwelcome harassment—the various alleged incidents involving Lynch, Rivers, Brown, and Brewer.

The amended complaint, however, is again devoid of facts to support a contention that the unwelcome harassment was based on Smith's sex, color, or national origin. Hostile work environment harassment must be based on plaintiff's sex, color or national origin or stem from discriminatory animus. *See*, Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 960 (10th Cir. 2012); O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). The amended complaint provides no facts supporting a reasonable inference that the unwelcome harassment was based upon Smith's sex, color, or national origin or stemmed from discriminatory animus. General harassment, if not based upon sex, color, or national

6

origin, is not actionable under Title VII. Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994). Indeed, Title VII does not establish a "general civility code." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998). Smith has not linked any of the alleged incidents with gender-based, color-based, or national origin-based comments by Lynch, Rivers, Brown, or Brewer, and he has failed to allege facts to indicate any discriminatory motivation on the part of Lynch, Rivers, Brown, or Brewer underlying the incidents. The only fact alleged with respect to a possible motivation by Lynch was that he was displeased that Smith was in California with his ex-girlfriend. This is not sufficient to establish a Title VII hostile work environment claim based upon sex, color, or national origin. Further, the court finds that the facts alleged in the amended complaint, viewed together and in Smith's favor, fall short of making a showing of "severe or pervasive" harassment so as to have altered a term, condition, or privilege of Smith's employment and created an abusive working environment. Therefore, the court finds that Smith fails to allege a plausible Title VII hostile work environment claim based upon sex, color, or national origin.

*Disparate Treatment*

A plaintiff bringing a discriminatory suspension case makes out a prima facie case by alleging facts that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *See*, Hysten v. Burlington Northern and Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). Smith alleges he that he is male, black and African-American, and that he suffered

7

an adverse employment action—a three-day suspension.² Smith, however, fails to allege facts sufficient to plausibly support an inference that the alleged suspension took place under circumstances giving rise to an inference of sex, color or national origin discrimination.  An inference of discrimination may be shown in various ways, such as through allegations of "actions or remarks made by decisionmakers, preferential treatment given to employees outside the protected class, or more generally, upon the timing or sequence of events leading to [the] plaintiff's [suspension]." *See*, Barlow v. C.R. England, Inc., 703 F.3d 497, 505 (10th Cir. 2012) (quoting Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005) (internal quotation marks omitted).

From a review of the amended complaint and briefing, it appears that Smith seeks to satisfy the inference of discrimination requirement by alleging that his employer treated similarly situated employees more favorably.  "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" EEOC v. PVNF, L.L.C., 487 F.3d 790, 801 (10th Cir. 2007) (quoting McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006)).  Plaintiff points to two employees, Mark Smith (M. Smith) and Brewer.  Plaintiff, however, fails to allege facts to show that he, M. Smith, and Brewer were subjected to the same standards governing performance evaluation and discipline.  The amended complaint indicates that M. Smith and Brewer were subordinate to Smith.  In addition, Smith fails to allege facts sufficient to demonstrate that he, M. Smith, and Brewer engaged in conduct of comparable

---

² In his response, Smith alleges that the curtailed detail to California, loss of promotion and demotion (reassignment to the Phone Operating Room) also constituted adverse employment actions.  Doc. no. 11, p. 8.  However, in the amended complaint (counts I and IV), Smith only relies upon the 3-day suspension as the adverse employment action to support the disparate treatment claims.

seriousness. Although there are allegations that M. Smith and Brewer were granted generous leave from work, there are no allegations that this generous leave prevented them or other employees from completing any work duties or tasks. Part of the reason for Smith's three-day suspension, as alleged in the amended complaint, was the alleged failure to carry out supervisory duties. And the allegations show that he had annual reports due during the time he was to be on leave. Although Smith alleges that Lynch gave Brewer favorable treatment in workplace assignments because "she is a woman," he nonetheless alleges that this same favorable treatment was not given to other female employees, thereby negating that the favorable treatment given by Lynch was based on Brewer's sex. Further, with respect to the fact that Brewer publicly threatened Smith on the internet, there are no allegations to suggest that this conduct interfered with any of her duties or tasks or interfered with any other employees' duties or tasks or had anything to do with her job performance. Brewer's alleged conduct was not sufficiently similar to the alleged misconduct of Smith so as to permit an inference of discrimination on the basis of their disparate treatment. *See*, *e.g.*, PVNF, 487 F.3d at 801. The court therefore concludes that plaintiff also fails to allege a plausible Title VII disparate treatment claim based upon sex,[3] color, and national origin.

---

[3] Although not raised by defendant, the court notes that Smith's sex discrimination claim is properly analyzed as one for reverse discrimination under Notari v. Denver Water Dep't, 971 F.2d 585, 588-91 (10th Cir. 1992). Because reverse discrimination requires a determination that the defendant is the "unusual" employer that discriminates against the traditionally favored class of men, rather than women, plaintiff must allege "background circumstances" tending to establish that fact, or, in the alternative, that but for his status of being a man, he would not have been suspended. Notari, 971 F.2d at 591. Plaintiff's allegations fall short of either standard.

IV.

*Rehabilitation Act Claims*

Turning to the Rehabilitation Act claims, the court initially concludes that Smith fails to allege a plausible hostile work environment claim.[4] Smith fails to allege facts sufficient to plausibly support an inference that the alleged unwelcome harassment was based on Smith's alleged handicap, PTSD.  Hostile work environment harassment must be based on Smith's handicap or stem from discriminatory animus.  *See*, Hernandez, 684 F.3d at 960; O'Shea, 185 F.3d at 1097.  There are no allegations connecting the alleged unwelcome harassment to Smith's alleged handicap or discriminatory animus.  Smith has not linked any of the alleged incidents with handicapped-based comments by Lynch, Rivers, Brown, or Brewer, and he has failed to allege facts to indicate any discriminatory motivation on the part of Lynch, Rivers, Brown, or Brewer underlying the incidents.  Further, the court cannot say the alleged incidents, viewed together and in Smith's favor, are sufficient to be deemed severe or pervasive so as to have altered a term, condition, or privilege of Smith's employment and to have created an abusive working environment.  The court therefore concludes that Smith fails to allege a plausible hostile work environment claim under the Rehabilitation Act.

To establish a prima facie failure to promote case under the Rehabilitation Act, Smith must allege facts to show: (1) he was handicapped as defined by the Act; (2) he was qualified, with or without reasonable accommodation, to perform the essential job functions of the position he sought; and (3) his employer refused the promotion under circumstances which give rise to an inference the decision was based on his disability.  *See*, Rakity v. Dillon Companies, Inc., 302 F.3d 1152, 1164

---

[4] It appears the Tenth Circuit recognizes such a claim. *See*, Clancy v. Miller, 837 Fed. Appx. 630 (10th Cir. 2020) (unpublished case cited as persuasive pursuant to 10th Cir. R. 32.1(A)).

10

(10th Cir. 2002);[5] *see also*, Woodman v. Runyon, 132 F.3d 1330, 1338 (10th Cir. 1997). In his amended complaint, Smith alleges that he was passed over for a promotion because of his handicap. However, as pointed out by defendant, Smith fails to allege any facts to show that he was refused any promotion. Indeed, there are no allegations that Smith applied for a promotion. Further, even if the curtailed detail to California could be construed as refusing a promotion, Smith fails to allege any facts to plausibly support an inference that the detail was curtailed under circumstances which give rise to an inference that it was based on his handicap. The court therefore concludes that Smith fails to allege a plausible disability discrimination claim under the Rehabilitation Act.

V.

*Conclusion*

For the reasons stated, the Motion to Dismiss of Defendant Denis McDonough, Secretary of Veterans Affairs (doc. no. 10), is **GRANTED**. Plaintiff Eric Smith's Title VII and Rehabilitation Act claims and action against defendant Denis McDonough, Secretary of Veterans Affairs, are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6), Fed. R. Civ. P. Judgment shall issue separately.

IT IS SO ORDERED this 23rd day of May, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0737p002 (rev).docx

---

[5] The ADA and Rehabilitation Act apply the same standards in employment discrimination claims. *See*, Jarvis v. Potter, 500 F.3d 1113, 1121 (10th Cir. 2007).